FILED
01 OCT 24 PM 3:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ENTERED
OCT 25 2001

CHRIS TOUCHTON d/b/a TOUCHTON )
ENTERPRISES, INC., )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO. 99-G-1224-S
)
DOVER CORPORATION/ROTARY LIFT )
DIVISION, DOVER INDUSTRIES )
COMPANY, )
)
    Defendant. )

## MEMORANDUM OPINION

This cause is before the court upon the motion of the defendant, Dover Corporation/Rotary Lift Division Dover Industries Company ("Rotary Lift") for summary judgment. Touchton Enterprises, Inc. ("Touchton") filed a five-count complaint against Rotary Lift on May 14, 1999. The court will consider defendant's motion for summary judgment as to each count of plaintiff's complaint in turn.

### COUNT I

In count one of the complaint Touchton alleges that Rotary Lift breached the terms of a sales representative contract dated May 1, 1985. Specifically, count one

38

alleges that Rotary Lift breached the agreement by improperly changing the rate of commissions due the plaintiff under the terms of the contract, failing to provide proper written notice to plaintiff of changes in the commission schedule, and failing to ship products ordered by the plaintiff for his customers.

The sales representative agreement provided that Touchton Sales Company would promote the sale of Rotary Lift's products and that in return, Rotary Lift would pay a commission. With respect to commissions the contract provides as follows:

> The Representative agrees to accept as full compensation for the services rendered under this contract commissions as established in Schedule B.
>
> The Representative agrees that the Company shall have the right to change, amend, or issue new commission schedules on thirty (30) days written notice to the representative.

Schedule B to the contract sets forth the commission rate to be paid for the various types of sales and also contains the following clause:

> (6) Rotary may deviate from these schedules due to unusual circumstances associated with particular order (i. e. special H/D applications or other instances mutually agreed upon in advance).
>
> * * * *
>
> (8) In the event of any conflict between this schedule and any previous schedule or provision of the Representative's contract, the schedule shall govern.

In brief Touchton argues that under the terms of the contract Rotary Lift could only change the commission schedule if such change was "mutually agreed upon in advance." This is an incorrect interpretation of Schedule B to the contract, which by its

plain terms deals with deviations from the established commission schedule in unusual cases. The body of the contract clearly allows Rotary lift to "change, amend, or issue new commission schedules on (30) days written notice to the representative." Touchton does not allege in its complaint that Rotary Lift deviated from the commission schedule on particular orders, rather Touchton complains that Rotary Lift changed the commission rate applicable to his sales in general.

The sales representative agreement is unambiguous with respect to alteration of the commission schedule. By the plain meaning of the language employed, Rotary lift was entitled to change the commission schedule without Touchton's consent "on (30) days written notice to the representative." There is no conflict between this provision and Schedule B. Therefore, the question is not whether Touchton assented to the change, but rather whether Rotary Lift complied with the written notice requirement.

Rotary Lift argues that Touchton has waived the written notice requirement for commission changes in the sales representative agreement. The sales representative agreement provides that it will be governed by the law of the State of Indiana. Under Indiana law, a written notice provision in a contract may be waived. Integrity Ins. Co. v. Lindsey, 444 N.E. 2d 345, 347 (Ind. Ct. App. 1983)("[W]ritten notice and verified proofs of loss are valid and enforceable, however, they are also easily waived."). In Integrity, the court stated as follow:

> Where the insurer or its agents have formed a relationship with the insured or <u>acted towards him in such a way as to cause the insured to reasonably</u>

3

believe written notice and formal proofs of loss will not be required, the insurer will not be permitted to raise such matters as a defense.

444 N.E. 2d at 347 (emphasis added). Furthermore, the court noted:

Once a contract condition has been waived <u>and the waiver has been acted upon</u>, the failure to perform the condition cannot be the basis for breach of the contract. Furthermore, waiver <u>may be implied by the acts, omissions or conduct</u> of one of the parties to the contract.

444 N.E. 2d at 347-48 (emphasis added). Therefore, if the actions or omissions of Touchton caused Rotary Lift to reasonably believe that the written notice requirement of the sales representative agreement would not be insisted upon with respect to commission changes, Touchton must be found to have waived that requirement.

There were at least six different changes to the commission schedule during the time that Touchton was a sales representative for Rotary Lift. (Dirksen Depo. ¶¶ 6-8.) It is not disputed that Touchton continued to accept commission checks that reflected these modifications to the commission schedule. It is also undisputed that Touchton continued to make sales after receiving those checks. These actions were sufficient to cause Rotary Lift to reasonably believe that Touchton waived the written notice requirement. It is Touchton's objective actions that are important and not its subjective intent.[1] Touchton's objective actions were clearly sufficient to cause Rotary Lift to

---

[1] Touchton's argument that it could not have waived the written notice requirement because it was not aware that it was operating under a contract is absurd. Touchton's argument is in effect that it forgot that it was operating under a contract and therefore cannot be held to have waived the terms of that contract. Chris Touchton signed
(continued...)

4

reasonably believe that Touchton was waiving the written notice requirement and Rotary Lift acted upon that waiver by continuing to retain Touchton as an agent. Based upon the undisputed facts in this case, Touchton's actions constituted a waiver under Indiana law of the requirement that changes in the commission schedule be in writing.

Although the court finds that Rotary Lift is entitled to summary judgment as to count one of the complaint because Touchton waived the written notice requirement— as to the only commission change within the applicable statute of limitations period, (See discussion infra pp. 7-10) written notice was given. Chris Touchton attended a sales representatives meeting conducted by Rotary Lift in January 1994. (Touchton Depo. 117.) At that meeting a "sales meeting outline" was handed out to each of the sales representatives who attended. (Dirksen Aff. ¶ 8) That handout contained a page that outlined new commission policies for distributor purchases. (Dirksen Aff. Ex. G.) Chris Touchton was asked at his deposition whether he had seen the outline and he responded "yes." (Touchton Depo. 118.) In addition, the new commission policies were displayed at that meeting by overhead projector to the sales representatives. (Dirksen Aff. ¶ 8.) Although Chris Touchton testified that he could not remember seeing the display at that meeting, he also acknowledged that he could not say that it was not displayed. (Touchton

---

[1](...continued)
the sales representative agreement and cannot claim ignorance of its terms. Therefore, Touchton must be charged with awareness of its right to insist upon written notification of changes to the commission schedule.

Depo. 122.) Therefore, the undisputed evidence in the record is that Touchton attended the meeting and received a copy of the outline, which contained a page outlining the commission changes. This is sufficient to satisfy the written notice requirement in the sales representative agreement.

Touchton has introduced no evidence tending to show that Rotary Lift improperly failed to ship products ordered by the plaintiff for his customers. Therefore, Rotary Lift is entitled to summary judgment on all claims asserted in count one of the plaintiff's complaint.

Rotary Lift also asserts that Touchton's claims in count one are barred by the applicable statute of limitations. The parties disagree as to whether the Alabama or Indiana statute of limitations for contract actions applies. Federal jurisdiction in this action is based upon diversity of citizenship. Therefore, this court will apply the choice of law rules of the state of Alabama to determine whether Alabama or Indiana's statute of limitations applies to Touchton's breach of contract claim. Ellis v. Great Southwestern Corp., 646 F.2d 1099 (5th Cir. June 5, 1981).[2]

Touchton correctly argues that the contracts at issue in the instant case provide that they shall be governed by Indiana law. However, in Alabama it is well settled that when a statute of limitations is procedural and goes only to the remedy the lex

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

6

fori and not the lex loci governs. Etheredge v. Genie Industries, Inc., 632 So. 2d 1324, 1326 (Ala. 1994). It is also hornbook law that statutes of limitations are generally procedural and not substantive. Etheredge at 1326. Alabama courts will only apply another state's statute of limitations when the "limitation is so inextricably bound up in the statute creating the right that it is deemed a portion of the substantive right itself. Etheredge at 1327. Touchton has not argued that the Indiana statute of limitations for breach of contract is such an example and it is clear to the court that it is not. Therefore, Alabama's statute of limitations applies to Touchton's claims.

The Alabama statute of limitations for contract claims not under seal is six years. Ala. Code § 6-2-34 (1975). This means that any alleged breach of the contract occurring prior to May 14, 1993, is barred by the statute of limitations.

In contract actions, the statute of limitations begins to run "when a cause of action on the contract accrues, which is to say, when the contract is breached." Seybold v. Magnolia Land Co., 376 So. 2d 1083, 1085 (Ala. 1979).

> "Breach" consists of the failure without legal excuse to perform any promise forming the whole or part of the contract. Where the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do.

Seybold at 1083. In the present case, the alleged breach consisted of Rotary Lift failing to provide Touchton with written notice of changes to the commission schedule. A breach, therefore, occurred each time the commission schedule was changed without prior written

notice. Only one of the alleged breaches occurred within the limitations period and as noted above, the evidence of record establishes that on that occasion, written notice was in fact given. As to all other alleged breaches, the statute of limitations bars recovery.

Touchton argues, however, that each monthly commission check that was based upon a modified commission schedule instituted without written notice constituted a new breach of contract. This argument is based upon the Michigan case of H.J Tucker & Associates, Inc. v. Allied Chucker and Engineering Co., 595 N.W.2d 176 (Mich Ct. App. 1999). The court in H.J. Tucker held that because the commissions earned by the plaintiff in that case were separately computed, paid monthly and were of a periodic nature, each "periodic payment made that is alleged to be less than the amount due . . . constitutes a continuing breach of the contract and the limitations period runs from the due date of each payment." 595 N.W.2d at 563 (quoting Harris v. City of Allen Park, 483 N.W.2d 434, 436 (Mich. Ct. App. 1992). The court found the situation analogous to installment contracts and alimony payment cases, which are controlled by Michigan statutes that specifically provide that in such cases the claims accrue as each payment comes due. See Mich. Comp. Laws §§ 600.5836 and 600.5837. Alabama has no similar statutory provisions and has never adopted the "continuing contract" doctrine. AC, Inc. v. Baker, 622 So. 2d 331, 335 (Ala. 1993)("[T]his court has never applied a 'continuing contract' doctrine . . . ."). Therefore, the court concludes that H.J. Tucker does not reflect the law in Alabama.

Furthermore, H.J. Tucker is distinguishable on its facts. In H.J. Tucker, it appears that at least a portion of the monthly commission payment was attributable to the referral of customers to the defendant, rather than from monthly sales.

> In return for his services as a manufacturing representative, Joe Tucker was to be paid a commission by defendant for the sales <u>or customers he procured for defendant</u>. Although the exact terms of the oral commission agreement subsequently were disputed, it is generally undisputed that Julian VanMaele, on behalf of defendant, agreed to pay Joe Tucker commissions of five percent of the labor that defendant charged its customers <u>for work that Joe Tucker obtained for defendant</u>.

595 NW 2d at 179 (emphasis added).  The arrangement, therefore, might have been akin to a royalty, with the plaintiff receiving a continuing commission for prior referrals of customers, without any new performance on his part.  In the present case, Touchton was paid a commission based upon his current sales.  The sales representative agreement does not provide for a future continuing payment to Touchton for past services or referral of customers, but rather anticipates a series of sales by Touchton with corresponding commission payments on a monthly basis.  Therefore, the present case is distinguishable from H.J. Tucker.

This case does not represent an installment contract.  Installment has been defined as follows:

> Partial payment of a debt or collection of a receivable.  Different portions of the same debt payable at different successive periods as agreed. Partial payments on account of a debt due.

9

Black's Law Dictionary 798 (6th ed. 1990). An "installment," therefore, represents partial payment of a single debt. Because each commission payment was attributable to new sales, the present case does not involve installment payments.

## COUNT II

In count two of its complaint Touchton alleges that Rotary Lift breached a Master Distributor Agreement that was entered into between the parties in March 1996 and renewed annually, with the last agreement being dated March 30, 1998. Touchton alleges that Rotary Lift breached the agreement by failing "to pay commissions due and owing on local and national accounts." (Complaint, Count II.) In brief Touchton asserts that Rotary lift breached the distributor agreement as follows:

> Rotary Lift, once it notified Plaintiff of its decision to terminate Touchton Enterprises' Sales Representation Agreement, also interfered with Touchton Enterprises' distributor agreement by locking Plaintiff out of the Rotary system and refusing to provide support. Furthermore, and as stated *supra,* Rotary Lift unilaterally altered its procedures regarding the credit [debit ?] balances it would permit. Although Touchton Enterprises had maintained balances in excess of $200,000.00 in 1997, Rotary Lift refused to release an order placed by Touchton Enterprises due to a $12,000.00 balance owed on Touchton Enterprises' account.

The master distributor agreement, however, does not reference access to the "Rotary system" or provide for "credit balances." The agreement merely provides for Rotary Lift to sell equipment to Touchton upon receipt of a proper order, and for Touchton to pay Rotary Lift "on each invoice of sale." There is no provision in the contract regarding Rotary Lift extending Touchton credit and the contract provides that

any modifications to the agreement shall be in writing and signed by all parties. Touchton has introduced no evidence tending to show that the agreement was modified to require Rotary Lift to sell it products on credit or that Rotary Lift failed to provide support or otherwise breached the agreement. Therefore, Rotary Lift is entitled to summary judgment as a matter of law as to count two of plaintiff's complaint.

## COUNT III

In count three of its complaint, Touchton alleges that Rotary Lift converted to its own use funds which were due and owing to Touchton. In particular, Touchton alleges that from September 1998 through December 28, 1998, Rotary Lift:

> converted to its own use funds which were due and owing to Plaintiff, in the approximate amount of $30,769.28. Said funds were commissions due and owing to Plaintiff under the Sales Representative Agreement. Defendant wrongfully applied said commissions to the balance on Plaintiff's Distributer account number 71180 without his knowledge or consent.

(Complaint ¶ 12.) In brief, Touchton supports its conversion claim as follows:

> It is undisputed that Rotary Lift issued checks made payable to Touchton Enterprises for commissions due and owing under the Sales Rep. Agreement between the parties. It is also undisputed that Rotary Lift forged the endorsement on these checks and deposited them into Rotary's account to be applied to balances owing under the parties' distributor agreement. See Check Memo (Exhibit 11). The check, itself, constituted "specific funds" which were directly attributable to Touchton Enterprises.

Touchton's conversion claim is governed by Indiana law. "A federal court sitting in diversity applies the substantive law of the state in which it sits, including that states choice of law. Alabama's law of conflicts applies the lex loci contractus and lex loci

11

delicti." Picker International, Inc. v. Parten, 935 F.2d 257, 260 (11th Cir. 1991)(citations omitted). Because the actions by Rotary Lift that allegedly constituted conversion occurred in Indiana, Alabama courts would apply the law of Indiana to Touchton's conversion claim. See Charash v. Oberlin College, 14 F.3d 291, 297 (6th Cir. 1994)(conversion occurs in state where actions alleged to constitute conversion occur rather that where putative rightful owner feels the loss).

Under Indiana law, an action for conversion of a check may not be brought by the payee unless there has been delivery of the check.

> An action for conversion of an instrument may not be brought by:
>
> * * *
>
> (2) a payee . . . who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

Ind. Code § 26-1-3.1-420(a) (West 1995).[3] Because it is undisputed that the checks were never delivered to Touchton, Rotary Lift is entitled to summary judgment as a matter of law as to Count III of the complaint.

### COUNT IV

Count four is for tortious interference with business relations. Touchton in its brief explains its wrongful interference claim as follows:

---

[3] Alabama's version of the Uniform Commercial Code contains an identical provision. See Ala. Code § 7-3-420(a).

> In his deposition, Chris Touchton articulated Touchton Enterprises' "Tortuous [sic] Interference" claim against Rotary Lift.
>
> Rotary Lift interfered with the customer base that Touchton Enterprises had in started [sic] <u>selling direct in both parts and equipment</u>. Before that time, they would not sell or did not sell.
>
> <u>Touchton Depo.</u> at 271. Rotary Lift misunderstands Plaintiffs [sic] claims to include a claim that Rotary interfered with the contract between Plaintiff and Defendant. Rather, Plaintiff claims in this lawsuit that Rotary Lift interfered with Plaintiff's contractual and business relations with third parties <u>by soliciting Plaintiff's customer base</u>.

(Plaintiff's Brief at pp. 24-25. (emphasis added).) Touchton's claim, therefore, rests upon two alleged acts of interference on the part of Rotary Lift: Selling directly to Touchton's customers and soliciting Touchton's customer base. The applicable master distributor agreement between Touchton and Rotary Lift does not prevent Rotary Lift from selling directly to customers of Touchton or from competing for Touchton's customer base. Touchton is attempting to prohibit Rotary Lift from taking actions allowed by the master distributor agreement under the guise of an interference with business relations claim.

The situation is closely analogous to that in <u>Colonial Bank v. Patterson</u>, 788 So. 2d 134 (Ala 2000).[4] In <u>Patterson,</u> a dispute arose between the two co-owners of a corporation, Patterson and Nordness. 788 So.2d at 136. Nordness, the corporation's president, informed Patterson that the corporation was in a bad financial condition and

---

[4] The alleged interference with business relations took place if at all in Alabama. Alabama courts apply <u>lex loci delicti</u> in tort actions. See discussion of plaintiff's conversion claim <u>supra</u>. Therefore, Alabama law applies to Touchton's wrongful interference claim.

13

was unable to pay either of them a salary. 788 So.2d at 136. Patterson, however, continued to pay his own salary from the corporation's account using counter checks. 788 So.2d at 136. Nordness, upon learning of this, presented to Colonial Bank a corporate resolution purporting to dismiss Patterson from the company and another purporting to remove Patterson as a signatory to the account.[5] 788 So.2d at 136. Colonial responded by authorizing a stop order on all counter checks and subsequently refused to honor a counter check presented by Patterson that was made payable to himself. 788 So.2d at 136. It is this refusal that formed the basis of Patterson's wrongful interference claim. The court concluded that "Colonial had the legal right to do exactly as it did." 788 So.2d at 139. The court noted that to allow the claim would "superimpose on a wrongful interference claim a requirement of good faith that would compel a party to forgo any reliance on a legal right conferred by the agreement [between the defendant and the plaintiff]." 788 So.2d at 139. Furthermore, it held that "[t]he conduct of Colonial that Patterson condemns is specifically allowed by the agreement, and Patterson, by characterizing that conduct as conduct taken in bad faith, cannot defeat Colonial's right to take that action." 788 So.2d at 139.[6]

---

[5] Nordness's authority to take these actions were at issue in <u>Patterson</u>. However, the court concluded that the signature-card contract signed by both Patterson and Nordness allowed Colonial to refuse payment of the counter check presented for payment by Patterson.

[6] <u>BellSouth Mobility, Inc. v. Cellulink, Inc.</u>, reaches the same conclusion as <u>Patterson</u>, noting that "[w]hatever a man has a legal right to do, he may do with impunity,
(continued...)

In the present case, the master distributor agreement does not prohibit Rotary Lift from selling directly to Touchton's customers or from competing for Touchton's customer base. Rotary Lift had every right to take these actions under the master distributor agreement and Touchton's intentional interference with business relations claim must fail based upon the holding in <u>Patterson</u>.

Even if <u>Patterson</u> did not prevent Touchton from maintaining his wrongful interference claim, Rotary Lift would nonetheless be entitled to summary judgment. The requirements under Alabama law to recover for interference with business relations have been set forth by the Eleventh Circuit Court of Appeals as follows:

> To prove tortious interference with business relations in Alabama, a plaintiff must show: (1) the existence of a contract or business relation, (2) defendant's knowledge of the contract or business relation, (3) intentional interference by the defendant with the contract or business relation, (4) absence of justification for the defendant's interference, and (5) damage to the plaintiff as the result of the defendant's interference. See Mut. Savs. Life Ins. Co. v. James River Corp. of Va., 716 So.2d 1172, 1180 (Ala. 1998). In addition, a plaintiff must show "some evidence of fraud, force, or coercion [ ] on the defendant's part." Joe Cooper & Assocs., Inc. v. Cent. Life Assurance Co., 614 So.2d 982, 986 (Ala.1992) (citing Griese-Traylor Corp. v. First Nat'l Bank of Birmingham, 572 F.2d 1039, 1045 (5th Cir. 1978)); accord Barber v. Business Prods. Ctr., Inc., 677 So.2d 223, 227 (Ala. 1996).

<u>U.S. Steel, LLC, v. Tieco, Inc.</u>, 261 F.3d 1275, 1292 (11th Cir. 2001). Touchton has introduced no evidence of "fraud, force, or coercion" as is required to recover for

---

[6](...continued)
regardless of motive, and if in exercising his legal right in a legal way damage results to another, no cause of action arises against him because of a bad motive in exercising the right." 2001 WL 564264, *9 (Ala. 2001)(not released for publication).

15

interference with business relations. Nor has Touchton introduced evidence supporting its alleged damages. Therefore, Touchton has failed to introduce a genuine issue of fact as to these two essential elements of its wrongful interference claim and Rotary Lift is entitled to a judgment as a matter of law as to count four of the complaint.

## COUNT V

Count five of plaintiff's complaint asserts statutory claims under the Alabama Sales Representative Commission Contract Act. The plaintiff seeks to recover under the act because Rotary Lift failed to retain the plaintiff by written contract and has failed to timely pay commissions due. The plaintiff quotes two sections of the Alabama Code in its complaint. However, the quoted sections were replaced by Act No. 94-686 in 1994. The plaintiff has offered no reason that a repealed act should apply to this action. Rotary Lift argues that because the sales representative agreement provides that it is to be governed by Indiana law, the Alabama act does not apply. However, the current version of the act provides that it "may not be waived, whether by express waiver or by any provision in a contract attempting to make the contract or agreement subject to the laws of another state." Ala Code § 8-24-4 (1975).[7]

Act No. 94-686 completely replaced the previous version of the Alabama Sales Representative Commission Contract Act. Section 8-24-3 sets forth the statutory

---

[7] Because Rotary Lift did not address this provision of the act, it too appears to have been unaware that the 1994 act replaced the prior version.

right to recover damages under the act and provides that "[a] principal who fails to pay a commission as required by section 8-24-2 is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and court costs." Section 8-24-2 provides as follows:

> (a) The terms of the contract between the principal and sales representative shall determine when a commission is due.
>
> (b) If the time when the commission is due cannot be determined by a contract between the principal and sales representative, the past practices between the parties shall control, or if there are no past practices, the custom and usage prevalent in this state for the business that is the subject of the relationship between the parties shall control.
>
> (c) All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within thirty days after the date of termination. Commissions that become due after the termination date shall be paid within thirty days after the date on which the commissions become due.

The act, therefore, provides in relevant part a statutory right to recover in the event that a principal fails to pay within thirty days after termination commissions due at the time a sales representative is terminated.[8] It is important to note, however, that the entitlement to a commission is determined by the contract between the parties. If the sales representative is not due any commissions, there is no right to recover under the statute. Touchton has introduced no evidence tending to show that it was not paid commissions to which it was due in accordance with the requirements of its contract with Rotary Lift.

---

[8] The act no longer requires that a contract between a principal and a sales representative be in writing as did the previous version of § 8-24-2.

17

Because Rotary Lift has not breached the sale representative agreement with Touchton, Touchton may not recover under the statute. Accordingly, Rotary Lift is entitled to summary judgment as to count five of the complaint.

## CONCLUSION

For the foregoing reasons, Rotary Lift is entitled to summary judgment as to all claims asserted by Touchton in its complaint, there being no genuine issue as to any material fact and Rotary Lift being entitled to a judgment as a matter of law. No summary judgment motion has been filed with respect to Rotary Lift's counterclaim. Therefore, it remains pending. The parties will be required to present to the court a non-argumentative enumeration of the issues remaining for trial within 14 days of the entry of this order and will be given 30 days to file summary judgment motions directed towards Rotary Lift's counterclaim.

An appropriate order will be entered contemporaneously herewith.

DONE this 24th day of October 2001.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.